1  RICHARD R. PATCH (State Bar No. 88049)
   CLINTON L. TODD (State Bar No. 218670)
2  NYOKI T. SACRAMENTO (State Bar No. 239046)
   COBLENTZ, PATCH, DUFFY & BASS LLP
3  One Ferry Building, Suite 200
   San Francisco, California  94111-4213
4  Telephone:  415.391.4800
   Facsimile:  415.989.1663
5  Email:   ef-rrp@cpdb.com,
            ef-clt@cpdb.com,
6           ef nts@cpdb.com

7  Attorneys for Plaintiff and Counterdefendant
   RAFAEL TOWN CENTER INVESTORS, LLC

8

9                  **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11 RAFAEL TOWN CENTER INVESTORS,          Case No. C 06 6633 SI
   LLC, a Delaware limited liability company,
12                                         **NOTICE OF MOTION AND MOTION OF**
                  Plaintiff,               **PLAINTIFF AND**
13                                         **COUNTERDEFENDANT RAFAEL**
          v.                               **TOWN CENTER INVESTORS, LLC FOR**
14                                         **SANCTIONS; MEMORANDUM OF**
   THE WEITZ COMPANY, LLC, a limited       **POINTS AND AUTHORITIES IN**
15 liability company and successor to THE  **SUPPORT THEREOF**
   WEITZ COMPANY, INC., an Iowa
16 corporation; and DOES 1 through 50,     Date:       July 13, 2007
   inclusive,                              Time:       9:00 a.m.
17                                         Courtroom.: 10
                  Defendants.              Judge:      Hon. Susan Illston
18 ─────────────────────────────────
   AND RELATED COUNTERCLAIM.              Action Filed:  September 22, 2006
19 ─────────────────────────────────     Trial Date:    November 5, 2007
   THE WEITZ COMPANY I, INC., an Iowa
20 corporation

21                Third-Party Plaintiff,

22        v.

23 HANSON GLASS & MIRROR CO., a
   California corporation; FITCH PLASTERING
24 CORPORATION OF CALIFORNIA, a
   California corporation; DANIEL
25 MACDONALD AIA ARCHITECTS, a
   California corporation; and MOES 1-50,
26 inclusive,

27                Third-Party Defendants.
   ─────────────────────────────────
28 AND RELATED CROSSCLAIM.

04846.027.614830v6                                    Case No. C 06 6633 SI
**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ............................................................... 1

MEMORANDUM OF POINTS & AUTHORITIES ........................................... 1

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 3

I.     RELEVANT FACTS ...................................................................... 3

II.    WEITZ'S AND SEYFARTH'S REPEATED ABUSE OF THIS COURT'S DISCOVERY RULES. .............................................. 4

    A.    Weitz And Seyfarth Failed, Three Times, To Produce Knowledgeable Witnesses In Response to RTCI's 30(b)(6) Notice. ........... 4

        1.   Hornaday Was Completely Unprepared To Testify On February 7, 2007. ...................................................... 4

        2.   Bontrager Was Not Prepared To Testify On February 14, 2007. ...................................................... 5

        3.   Hornaday Was Only Marginally More-Prepared To Testify At His February 20, 2007 "Take-Two." ........................................... 8

        4.   Weitz's Failure To Produce Knowledgeable Witnesses Resulted In Substantial Wasted Time And Unnecessary Costs and Fees. ....................................... 13

    B.    Seyfarth Failed To Properly Produce Documents To RTCI. ...................... 14

        1.   Seyfarth's First And Second Productions Clearly Failed To Conform To Federal Rules. ..................................... 15

        2.   Seyfarth's Final Version of Defendant's Production Demonstrated That The Initial Productions Had Been "Shuffled." ................................................. 16

        3.   Seyfarth's Multiple Productions Of Weitz's Documents In Improper Formats Has Resulted In Substantial Wasted Time And Excessive Costs. ..................................... 17

    C.    Meet And Confer Efforts. ......................................................... 17

ARGUMENT ........................................................................................................ 18

I.    WEITZ SHOULD BE SANCTIONED, UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(d) AND NORTHERN DISTRICT LOCAL RULE 1-4 FOR FAILING TO PRODUCE KNOWLEDGEABLE AND PREPARED WITNESSES IN RESPONSE TO RTCI'S RULE 30(b)(6) NOTICE. .................................. 18

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

II.     SEYFARTH SHOULD BE SANCTIONED FOR REPEATEDLY PRODUCING MASSIVE QUANTITIES OF DOCUMENTS TO RTCI IN NO DISCERNIBLE ORDER AND IN WILLFUL DISREGARD OF THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 34(b). ........ 22

III.    THIS COURT SHOULD ORDER WEITZ AND SEYFARTH TO REIMBURSE RTCI FOR THE FEES IT INCURRED IN PREPARING THIS MOTION. ................................................................................. 24

CONCLUSION ................................................................................................. 25

One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP

04846.027.614830v6

ii

Case No. C 06 6633 SI

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**TABLE OF AUTHORITIES**

**Cases**

*Artic Cat, Inc. v. Injection Research Specialists, Inc.*,
  210 F.R.D. 680 (D. Minn. 2002) .................................................................................... 22

*B.K.B v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) ...................................................................................... 24

*Concerned Citizen v. Belle Haven Club*,
  223 F.R.D. 39 (D. Conn. 2004) ..................................................................................... 19

*FDIC Corp. v. Butcher*,
  116 F.R.D. 196 (E.D. Tenn. 1986) ................................................................................ 18

*Ferrito v. Ikon Office Solutions, Inc.*,
  2000 U.S. Dist. LEXIS 22336 (D. Kan. 2000) ............................................................. 23

*Fjelstad v. Am. Honda Motor Co.*,
  762 F.2d 1334 (9th Cir. 1985) ...................................................................................... 22

*In re Adelphia Comms. Corp.*,
  338 B.R. 546 (S.D.N.Y. 2005) ...................................................................................... 23

*In re Vitamins AntiTrust Lit.*,
  216 F.R.D. 168 (D.D.C. 2003) ...................................................................... 18, 19, 21, 25

*Intl. Assoc. of Machinists & Aerospace Workers v. Werner-Matsuda*,
  390 F.Supp.2d 479 (D. Md. 2005) ......................................................................... 18, 21

*Naegele v. Albers*,
  355 F.Supp.2d 129, 145 (D.C. 2005) ........................................................................... 23

*New Alaska Dev. Corp. v. Guetschow*,
  869 F.2d 1298 (9th Cir. 1989) ...................................................................................... 24

*Paul Revere Life Ins. Co. v. Jafari*,
  206 F.R.D. 126 (Md. 2002) .......................................................................................... 22

*Resolution Trust Corp. v. Southern Union Co., Inc.*,
  985 F.2d 196 (5th Cir. 1993) ............................................................................. 18, 19, 22

*Roadway Expressway, Inc. v. Piper*,
  447 U.S. 752 (1980) ............................................................................................... 22, 25

*Stiller v. Arnold*,
  167 F.R.D. 68 (N.D. Ind. 1996) .............................................................................. 23, 24

*United States v. Taylor*,
  166 F.R.D. 356 (M.D.N.C. 1996) ........................................................................... 19, 21

*Wagner v. Dryvit Sys., Inc.*,
  208 F.R.D. 606 (D. Neb. 2001) .................................................................................... 23

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Zambrano v. City of Tustin*,
    885 F.2d 1473 (9th Cir. 1898)....................................................................... 22, 25

**Statutes**

28 U.S.C. § 1927 ................................................................................................ passim

Federal Rule of Civil Procedure 30(b)(6) .......................................................... passim

Federal Rule of Civil Procedure 34(b) ..................................................................... 23

Federal Rule of Civil Procedure 37(d) ........................................................... 2, 18, 25

**Rules**

Northern District Local Rule 1-4 ........................................................... 18, 22, 24, 25

**Other Authorities**

Fed.R.Civ.P. 34 Advisory Committee Notes (1980)................................................. 24

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

## NOTICE OF MOTION AND MOTION

**TO DEFENDANT THE WEITZ COMPANY, LLC AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 13, 2007 at 9:00 a.m. or as soon thereafter as the matter may be heard in the above-entitled Court located at 450 Golden Gate Avenue, Courtroom 10, San Francisco, California 94102, Plaintiff and Counterdefendant Rafael Town Center Investors, LLC will and hereby does move for an order granting sanctions as follows:

1.      Against Defendant The Weitz Company, LLC ("Weitz") pursuant to Federal Rule of Civil Procedure 37(d), Rule 1-4 of the Local Rules of the United States District Court, Northern District, and the inherent power of the Court based upon Weitz's failure on three (3) separate occasions to produce knowledgeable and properly prepared witnesses in response to a duly served notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; and

2.      Against Seyfarth Shaw, LLP and Michael McKeeman, counsel for Weitz, pursuant to 28 U.S.C. Section 1927, Rule 1-4 of the Local Rules of the United States District Court, Northern District, and the inherent power of the Court based upon their reckless and willful conduct (repeatedly producing documents to RTCI in violation of the requirements of Federal Rule of Civil Procedure 34(b)), which has multiplied the proceedings unreasonably and vexatiously.

This Motion will be and is hereby based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in support hereof; the Declarations of Richard R. Patch, Jennifer Nelson, Clinton L. Todd, Nyoki T. Sacramento, Gregg M. Ficks, and all accompanying exhibits; all pleadings and papers in the Court's file; any matters properly the subject of judicial notice; all matters and arguments submitted at the hearing; and any other matters that the Court may properly choose to consider.

## MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION

Plaintiff Rafael Town Center Investors, LLC ("RTCI") submits this memorandum in support of its motion for sanctions against Defendant The Weitz Company, LLC ("Weitz") for its willful failure on three separate occasions to produce knowledgeable and prepared witnesses in response to RTCI's 30(b)(6) Notice, and, separately, against Seyfarth Shaw LLP and Michael

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1  McKeeman, Esq. (collectively "Seyfarth"), counsel for Weitz, for its conduct in producing

2  documents contrary to the Federal Rules by knowingly "shuffling" the documents thereby failing

3  to produce the documents in the manner that they were kept in the ordinary course of business or

4  by organizing and labeling them to correspond to the categories in the requests.

5       In response to RTCI's 30(b)(6) Notice, Weitz identified two witnesses – Bill Hornaday

6  ("Hornaday") and Michael Bontrager ("Bontrager").  Weitz first produced Hornaday, but after four

7  hours it was necessary to discontinue the deposition after it became clear that Hornaday was not

8  prepared to testify meaningfully about any of the topics on which he was designated.  Weitz then

9  produced Michael Bontrager.  Bontrager, however, like Hornaday, was far from properly

10  prepared.  He could not testify meaningfully regarding eight of the ten topics in which he was

11  designated.  And, although Hornaday was given 12 additional days to prepare properly for his

12  "second round," he could not adequately testify regarding 15 of the 33 topics in which he was

13  designated.  Weitz's failure to meet the minimum requirements of the Federal Rules resulted in

14  hour upon hour of wasted time and expense and clearly justifies an award of sanctions.

15       Equally outrageous is the conduct of Weitz's counsel, Seyfarth, in failing to properly

16  produce documents.  Instead of meeting its obligations under the Federal Rules, Seyfarth produced

17  DVDs to RTCI with copies of over 76,000 documents (the equivalent of 30 bankers boxes) which

18  were impossible to understand or properly utilize.  After objection, Seyfarth repeated its improper

19  production.  It was only after RTCI received Weitz's third version of the production, and after it

20  had spent countless hours reviewing and coding Weitz's second version of the production, that

21  RTCI was able to determine that Weitz's first two productions were incomprehensible "document

22  dumps" whereby page after page of documents had been produced out of order and numbered so

23  that documents that had no relationship whatsoever appeared to be produced from single files.

24       RTCI brings this Motion only after careful review and acknowledges that sanctions against

25  an opposing party and counsel with respect to discovery practices should not be granted lightly.

26  However, RTCI respectfully submits that if Rule 37(d)  and the provisions of 28 U.S.C.

27  Section 1927 are to have any meaning, and if a fundamental respect for the Federal Rules of Civil

28  Procedure is to be recognized as the minimum standard of acceptable conduct, then monetary

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA  94111-4213
415.391.4800 · FAX 415.989.1663

1  sanctions or other evidentiary sanctions must be awarded here.  Weitz's and Seyfarth's disregard of

2  their discovery obligations has delayed this litigation, wasted time, evaded proper disclosure and

3  resulted in extraordinary unnecessary expense to RTCI.  RTCI should not have to shoulder the

4  excessive costs caused by Weitz's and Seyfarth's complete failure to meet their obligations under

5  the Federal Rules.

6  ## BACKGROUND

7  ## I.      RELEVANT FACTS

8       Weitz was hired in 1999 by RTCI to be the general contractor to construct a commercial

9  retail and mixed-use project in San Rafael, California to be known as the "Rafael Town Center

10  Project."  (Rafael Town Center Investor, LLC's Complaint for Breach of Contract, Breach of

11  Warranty, and Indemnity ("Complaint") filed in the Marin Superior Court on September 22, 2006

12  and removed to this Court on October 24, 2006.)  Weitz agreed, by written contract, that it would

13  execute and oversee the entire project and explicitly agreed that it would use its best skill, best

14  effort, and best judgment in furthering RTCI's interests.  (Complaint, ¶¶ 7-8.)  Weitz warranted

15  that the materials and equipment furnished would be free from defects, would conform to the

16  requirements of the contract, and as the general contractor, Weitz agreed to be responsible to

17  RTCI for acts and omissions of its employees, its subcontractors and their agents, and any other

18  persons or entities performing work on the project for or on behalf of it or any of its

19  subcontractors.  (Id., ¶¶ 9, 12.)

20       Weitz failed to comply with its contractual obligations and responsibilities.  (Id., ¶ 14.)  To

21  RTCI's chagrin, Weitz produced a building with, by-and-large, substandard construction and

22  which severely leaks.  (Id., ¶ 14.)  For example, there were defects in the ceiling, the concrete, the

23  drainage, the elevator cabs, the footings, the framing, the wall systems, the waterproofing, and

24  even the ventilation.  (Id., ¶ 14.)

25       RTCI and Weitz first entered into litigation regarding Rafael Town Center in 2002 and, by

26  mutual agreement, were able to settle the initial dispute. (Id., ¶¶ 15-16.)  Under the terms of their

27  Settlement Agreement dated September 2003, Weitz expressly reaffirmed its obligations to RTCI

28  under the original contract and committed itself to perform and complete work related to the water

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1    leakage.  (Id., ¶ 17.)  To date, Weitz has not completed its repair obligations and Rafael Town

2    Center continues to be subject to substantial water leakage and resulting property damage.  (Id.,

3    ¶¶ 19-21.)

4         RTCI filed the instant lawsuit on September 22, 2006.  Its Complaint alleges four causes of

5    action:  breach of contract; breach of the settlement agreement; breach of implied warranty; and

6    equitable indemnity.  (Id., ¶¶ 28-50.)  The action was removed by Weitz to Federal Court based

7    upon diversity.

8    **II.    WEITZ'S AND SEYFARTH'S REPEATED ABUSE OF THIS COURT'S
         DISCOVERY RULES.**

9

10        **A.    Weitz And Seyfarth Failed, Three Times, To Produce Knowledgeable
             Witnesses In Response to RTCI's 30(b)(6) Notice.**

11

12        On December 18, 2006, RTCI served Weitz with a Rule 30(b)(6) Notice, requesting that

13   Weitz produce witnesses on its behalf to testify regarding 45 specific categories.  (Declaration of

14   Richard R. Patch in Support of Plaintiff and Counterdefendant Rafael Town Center Investors,

15   LLC's Motion for Sanctions ("Patch Decl."), ¶ 2, Ex. A.)  Weitz designated Bontrager to testify

16   regarding 10 topics and Hornaday to testify regarding 33 topics.  (Patch Decl., ¶ 3, Ex. B.)

17           **1.    Hornaday Was Completely Unprepared To Testify On
                 February 7, 2007.**

18

19        Hornaday's deposition commenced on February 7, 2007, more than 50 days after Weitz

20   was served with the Notice of Deposition.  (Patch Decl., ¶¶ 4, 5.)  Hornaday, however, could not

21   provide meaningful testimony regarding a single topic.  (Patch Decl., ¶ 6.)  Hornaday admitted

22   that he had not reviewed the documents in the case and that other than meeting with his attorney

23   for four hours along with two other Weitz employees, Mike Bontrager and Rusty Martin, he had

24   not spoken with any of Weitz's employees who were personally involved in matters central to his

25   testimony.  (Patch Decl., ¶ 5, Ex. C at 13:22-17:14, 18:19-19:14, 101:3-6, 113:24-116:18, ¶ 6.)

26   His lack of knowledge and ill-preparation was apparent in every question asked by RTCI.  (Patch

27   Decl., ¶ 6.)

28   ///

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   After four hours of examination with Hornaday responding to RTCI's questions, more than

2   175 times, with variations of "I don't know," "I don't recall," and "I don't remember," Weitz's

3   counsel, Seyfarth, requested that RTCI suspend Hornaday's deposition and give him time to prepare

4   properly.  (Patch Decl., ¶ 6.)  RTCI agreed.  (Patch Decl., ¶ 5, Ex. C at 116:19-118:16, ¶ 6.)

5         **2.**        **Bontrager Was Not Prepared To Testify On February 14, 2007.**

6   Bontrager's deposition commenced on February 14, 2007.  (Patch Decl., ¶ 10, Ex. E.)

7   Bontrager was also ill-prepared.  (Patch Decl., ¶ 11.)  Bontrager responded to RTCI's questions,

8   more than 148 times, with variations of "I don't know," "I can't recall," and "I can't remember."

9   (Patch Decl., ¶ 11.)  Like Hornaday, the bulk of his testimony was useless.  (Patch Decl., ¶ 12.)

10  Significantly, Bontrager could not even testify about central issues in this case, such as what

11  actions Weitz had taken to satisfy its obligations under the settlement agreement.  (Patch Decl.,

12  ¶ 12.)  Ultimately, Bontrager could not testify meaningfully regarding eight of the ten categories in

13  which he was designated for testimony.  (Patch Decl., ¶ 12.)  The table below delineates several of

14  these instances.

| Description | Insufficient Preparation/Testimony |
| --- | --- |
| **CATEGORY 1**<br><br>"The terms and conditions in the SETTLEMENT AGREEMENT." | Bontrager testifies that he was in no way involved in the negotiations or mediation of the Settlement Agreement. When asked what he has done to compensate for this lack of first-hand experience and become Weitz's person most knowledgeable on the terms and conditions of the Settlement Agreement, Bontrager replies only "I read it."  (Patch Decl., ¶ 10, Ex. E at 34:4-15.) |
| | Bontrager testifies that he knew that people from Weitz were involved in the Settlement Agreement, specifically naming Dave Strutt and Bill Hornaday. Bontrager admits that he spoke to neither Mr. Strutt nor Mr. Hornaday regarding their understanding of the terms and conditions of the Settlement Agreement.  (Patch Decl., ¶ 10, Ex. E at 34:20-35:11.) |
| | Bontrager is unable to identify which claims were settled by Weitz. (Patch Decl., ¶ 10, Ex. E at 35:12-36:3.) |
| | Bontrager does not know whether or not any of the claims being made presently by RTCI were, in fact, settled under the Settlement Agreement.  (Patch Decl., ¶ 10, Ex. E at 36:16-37:12.) |
| **CATEGORY 2**<br><br>"The performance of YOUR obligations under the SETTLEMENT AGREEMENT." | Bontrager recalls that Weitz attempted to hire subcontractors and begin making repairs (as obligated under the Settlement Agreement) in late 2003 or early 2004. Bontrager then testifies that in order to elaborate any further he "could look up when subs and Weitz representatives were at the site."  (Patch Decl., ¶ 10, Ex. E at 38:20-39:25.) |

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213

415.391.4800 · FAX 415.989.1663

| Description | Insufficient Preparation/Testimony |
|---|---|
| | Bontrager does not know whether or not Weitz has undertaken any work at the project to satisfy its continuing warranty obligations (a Reserved Claim under the Settlement Agreement). (Patch Decl., ¶ 10, Ex. E at 70:18-72:11.) |
| | Bontrager does not have an understanding of the meaning of the terms "latent construction defects," which is referenced in the Settlement Agreement. Bontrager does not know if Weitz has done anything since September 2003 to satisfy its obligations under the Settlement Agreement for latent construction defects. (Patch Decl., ¶ 10, Ex. E at 72:17-74:6.) |
| | Bontrager does not recall whether or not Weitz did anything to performs its obligations under the Settlement Agreement before a written demand from Counsel in 2004. Bontrager maintains that Weitz was always committed to performing its obligations under the Agreement, but that Weitz encountered various difficulties, including weather and tenants. Bontrager cannot recall any problems caused by tenants or weather when questioned directly. (Patch Decl., ¶ 10, Ex. E at 91:14-93:6.) |
| | Bontrager cannot testify definitively as to what Weitz did between January 2004 and March 2004 to promptly perform its obligations under the Agreement. Bontrager then states that to provide such testimony, he would have to go back and review Weitz's records. (Patch Decl., ¶ 10, Ex. E at 94:5-96:25.) |
| | Bontrager cannot recall specifically any activities undertaken by Weitz to perform under the Settlement Agreement directly after March 22, 2004. (Patch Decl., ¶ 10, Ex. E at 97:1-18.) |
| | Bontrager does not know if Mr. Strutt was advised in March 2004 of RTCI's position that he needed to commence and complete repairs at the property. (Patch Decl., ¶ 10, Ex. E at 97:15-98:15.) |
| | Bontrager cannot attest one way or the other as to the veracity of an April 29, 2004 email from Mr. Schafer claiming that RTCI had not received a response from Weitz regarding its intention to commence or complete leak repairs under the Settlement Agreement. Bontrager does not recall if such a response was ever prepared. (Patch Decl., ¶ 10, Ex. E at 98:18-99:10.) |
| | Bontrager has no recollection of what Weitz was doing between the written demand of March 2004 and the above referenced April 29, 2004 email from Mr. Schafer to commence and complete repairs at the project. (Ex. E 99:11-100:22.) |
| **CATEGORY 3**<br><br>"ANY work done by YOU on the PROJECT on OR after June 4, 2003." | Bontrager denies that no significant activities were undertaken to remedy the window leakage problem until 2004, but when asked what significant activity did in fact occur at the property prior to 2004 Bontrager responds that he would need "look back at the record" to determine what actually occurred at the project. (Patch Decl., ¶ 10, Ex. E at 40:11-41:1.) |
| | Bontrager testifies that Corry Utz and Rusty Diehl were onsite during the 2004 repair efforts. Bontrager states that he has made no attempt |

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

| Description | Insufficient Preparation/Testimony |
|---|---|
| | to contact Mr. Diehl since the commencement of this litigation. (Patch Decl., ¶ 10, Ex. E at 67:14-68:7.) |
| | Bontrager is aware that Weitz hired Fitch Plastering to provide services at the project, but cannot testify as to what Fitch did.  (Patch Decl., ¶ 10, Ex. E  at 87:7-25.) |
| **CATEGORY 4**<br><br>"The WINDOW REPAIR OBLIGATION." | Bontrager cannot testify as to why Weitz did nothing to repair the windows until July 2004, 10 months after the Settlement Agreement was signed.  (Patch Decl., ¶ 10, Ex. E at 43:14-19.) |
| | Bontrager has not reviewed the shop drawings that Weitz used to install the windows, and therefore cannot testify as to whether or not the drawings were problematic. Bontrager does not know whether or not the integration of the storefront windows with the stucco walls at the project was poorly accomplished.  (Patch Decl., ¶ 10, Ex. E at 46:21-47:21.) |
| | Bontrager is not aware of Weitz retaining any consultants in its effort to determine how it would satisfy the window repair obligation.  (Patch Decl., ¶ 10, Ex. E at 52:5-.9) |
| | Bontrager does not know who installed the windows in the residential section of the property, nor whether Weitz did the labor to install any of the windows at the project.  (Patch Decl., ¶ 10, Ex.  at 70:9-14.) |
| **CATEGORY 5**<br><br>"ALL efforts by YOU to satisfy the WINDOW REPAIR OBLIGATION." | Bontrager testifies that although he is aware of inspections made at the site to decide how to remedy the leakage problem, he does not know what the inspections consisted of.  (Patch Decl., ¶ 10, Ex. E at 52:10-17.) |
| | Bontrager does not know if areas of the property that had failed a water test in October 2004 were ever repaired.  (Patch Decl., ¶ 10, Ex. E at 54:13-55:2.) |
| | Bontrager has seen invoices from Old Town Glass, indicating that Weitz hired them to repair leaks at the project. Bontrager does not know what Old Town Glass did as a "stopgap fix." Bontrager does not know whether or not Old Town Glass commenced work on June 21, 2004, nor whether Old Town Glass was successful in stopping the leaks that they had been hired to stop.   (Patch Decl., ¶ 10, Ex. E at 64:22-65:22.) |
| | Bontrager does not know if Weitz performed work on specific storefront windows, or whether the storefront windows on the south side were taken out and replaced.  (Patch Decl., ¶ 10, Ex. E at 81:3-18.) |
| **CATEGORY 8**<br><br>"The 2006 WJE REPORT with respect to the following:  whether the assumptions AND methodology used were proper; whether the tests performed were | Bontrager cannot testify one way or the other as to whether he believes the results of the WJE Report are accurate, stating only "I'm not a water intrusion expert." Bontrager does not know whether Weitz has reason to disagree with the results and conclusions in the Report. Bontrager states "I didn't study the report. I just read it. . ."  (Patch Decl., ¶ 10, Ex. E at 76:9-77:4.) |
| | Bontrager does not know whether or not the Report is accurate in stating that water collects at the floor between certain windows.  (Patch Decl., ¶ 10, Ex. E at 78:10-19.) |

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

| Description | Insufficient Preparation/Testimony |
|---|---|
| sufficient; AND whether the results were accurate." | Bontrager cannot attest to the veracity of Item No. 3 on the Report which identifies water entering the at the rear of the California Lacrosse store. Bontrager admits that he did not speak with Mr. Martin regarding this specific claim.  (Patch Decl., ¶ 10, Ex. E at 83:22-84:7.) |
| **CATEGORY 9**<br><br>"The URBAN BID with respect to the following: whether the proposed scope of work is proper; AND whether the time AND material rates AND unit prices used were proper." | Other than reviewing the Urban Bid itself, Bontrager has not done anything else to prepare for this category.  (Patch Decl., ¶ 10, Ex. E at 108:1-6.)<br><br>Bontrager has not evaluated the impact of the proposal on the current tenants at the property. Bontrager does not know if access to the property would be blocked.  (Patch Decl., ¶ 10, Ex. E at 110:6-17.)<br><br>Bontrager has not made an attempt to evaluate what this process would entail with respect to the continued occupancy and use of the property.  (Patch Decl., ¶ 10, Ex. E at 111:15-19.)<br><br>Bontrager has not evaluated any of the unit pricing set forth in the bid. Bontrager is unable to provide an opinion as to whether the $400 per handrail recoat is an accurate estimate.  (Patch Decl., ¶ 10, Ex. E at 111:25-112:9.)<br><br>Bontrager has no opinion as to whether the proposed coating is a good or bad product.  (Patch Decl., ¶ 10, Ex. E at 114:8-11.) |
| **CATEGORY 10**<br><br>"The FHAA/ADA DEMAND with respect to the following: the alleged accessibility impediments AND violations; AND, the installation of the allegedly defective interior doorways AND gates, stairs, AND pathways." | Bontrager has done nothing to investigate the violations that are asserted in the FHAA/ADA Demand.  (Patch Decl., ¶ 10, Ex. E at 115:10-13.)<br><br>Bontrager claims that the architect, not the contractor, determines the slope of pathways. Bontrager has not gone back to try and determine whether or not there were design sketches for the offending pathway in question.  (Patch Decl., ¶ 10, Ex. E at 116:7-117:7.)<br><br>Bontrager does not know whether or not Weitz was instructed by the architect to install the offending pathway at no more than a 2 percent grade.  (Patch Decl., ¶ 10, Ex. E at 120:3-8.)<br><br>Bontrager does not know whether or not Weitz knew and understood that the grade of the pathway had to comply with the ADA accessibility requirements.  (Patch Decl., ¶ 10, Ex. E at 123:12-16.)<br><br>Bontrager does not know if Weitz correctly or incorrectly installed the offending pathway.  (Patch Decl., ¶ 10, Ex. E at 124:13-15.) |

**3.      Hornaday Was Only Marginally More-Prepared To Testify At His February 20, 2007 "Take-Two."**

Hornaday's deposition recommenced on February 20, 2007.  (Patch Decl., ¶ 16.)

Unfortunately, it quickly became apparent that Hornaday was still not prepared to testify fully

regarding the topics in which he had been designated.  (Patch Decl., ¶ 17.)  Although marginally

more prepared than he was for the first session of his deposition, Hornaday could not

meaningfully testify regarding 15 of the 33 topics in which he was designated.  (Patch Decl., ¶ 17.)

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

In fact, he responded to RTCI's questions, more than 265 times, with variations of "I don't know," "I can't recall," and "I can't remember."  (Patch Decl., ¶ 17.)  The table below delineates some of the areas in which Hornaday was ill-prepared to testify.

| **Description** | **Insufficient Preparation/Testimony** |
|---|---|
| **CATEGORY 7**<br><br>"The 2003 WJE REPORT with respect to the following:  whether the assumptions AND methodology used were proper; whether the tests performed were sufficient; AND, whether the results were accurate." | Hornaday testifies that the only thing he did to prepare himself to provide testimony on this topic was to "briefly" review the 2003 WJE Report.  (Patch Decl., ¶ 16, Ex. G at 157:11-158:8.)<br><br>Hornaday testifies that he did not attempt to identify or review the "shop drawings" from Hanson Glass & Mirror referenced in the 2003 WJE Report in preparation for his deposition on this topic.  (Ex. G at 161:1-13.)<br><br>Hornaday testifies that he is not familiar with the methodology used to perform the tests in the 2003 WJE report.  (Patch Decl., ¶ 16, Ex. G at 164:2-15.)<br><br>Hornaday testifies that he does not know if there is anyone at Weitz who knows or has a view as to whether the methodologies used by WJE with respect to the preparation of the report, the testing and examinations were proper.  (Patch Decl., ¶ 16, Ex. G at 164:16-21.)<br><br>Hornaday testifies that he is not qualified to judge the methodology used in the 2003 WJE Report and is unaware of the assumptions used to prepare the report.  (Patch Decl., ¶ 16, Ex. G at 164:22-166:5.)<br><br>Hornaday testifies that he has not studied the 2003 WJE Report in detail and cannot make a judgment as to whether or not the results in the report are inaccurate.  (Patch Decl., ¶ 16, Ex. G at 166:12-167:9.) |
| **CATEGORY 12**<br><br>"The installation of the stucco finish on the exterior of the PROJECT." | Hornaday testifies that he does not know if the stucco system that was selected for this project fails to meet a minimum standard in the construction industry for Northern California.  (Patch Decl., ¶ 16, Ex. G at 149:1-9.)<br><br>Hornaday testifies that he does not know if the F metal installed on the retail piers at the project still has no method or means for water to drain.  (Patch Decl., ¶ 16, Ex. G at 135:23-136:8.)<br><br>Hornaday testifies that he does not know if there were any specific shop drawings showing the installation of the F metal at the retail pier section.  (Patch Decl., ¶ 16, Ex. G at 137:7-10.)<br><br>Hornaday testifies that he does not know whether the F metal installation in the retail pier section was anything he had reviewed by Mr. Lau.  (Patch Decl., ¶ 16, Ex. G at 137:11-14.)<br><br>Hornaday testifies that he does not know if Fitch (stucco installer) was questioned about the F metal installation.  (Patch Decl., ¶ 16, Ex. G at 137:20-24.)<br><br>Hornaday testifies that he could not identify what aspects of the window detail that Fitch was objecting to in its March 28, 2001 letter. (Patch Decl., ¶ 16, Ex. G at 176:13-17.) |

COBLENTZ, PATCH, DUFFY & BASS LLP<br>ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213<br>415.391.4800 · FAX 415.989.1663

9 Case No. C 06 6633 SI

NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

COBLENTZ, PATCH, DUFFY & BASS LLP

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213

415.391.4800 · FAX 415.989.1663

| Description | Insufficient Preparation/Testimony |
|---|---|
| | Hornaday testifies that he did not know if Weitz was aware that the stucco was being installed past the window frames of the storefront windows.  (Patch Decl., ¶ 16, Ex. G at 176:18-178:7.) |
| | Hornaday testifies that he did not know if anyone at Weitz objected to the way in which Fitch was installing the stucco around the storefront windows.  (Patch Decl., ¶ 16, Ex. G at 179:24-180:20.) |
| | Hornaday testifies that he did not know if Fitch had properly repaired the felt or waterproof layer where the scaffold was wired to the building.  (Patch Decl., ¶ 16, Ex. G at 180:3-181:2.) |
| | Hornaday testifies that he did not know if Weitz had ever made a determination that Fitch was or was not properly repairing the areas where the scaffold was wired to the building.  (Patch Decl., ¶ 16, Ex. G at 181:3-6.) |
| | Hornaday testifies that he did not know the what the final resolution was of the issues relating to Fitch's application of stucco control joints to the building before the application of the stucco.  (Patch Decl., ¶ 16, Ex. G at 181:21-182-8.) |
| | Hornaday testifies that he could not recall whether Weitz took the position that the decision to add the acrylic layer to the stucco finish was a good idea or a bad idea.  (Patch Decl., ¶ 16, Ex. G at 183:7-10.) |
| | Hornaday testifies that he did not know if the details, procedures, et cetera that led to the fact that water could infiltrate the building at the stucco control joint intersections was any different anywhere else in the building than it was in the stucco exterior on south wall of the teardrop section.  (Patch Decl., ¶ 16, Ex. G at 223:3-224:4.) |
| | Hornaday testifies that he does not recall that in 2002 WJE believed that the water leaks were a function of the stucco expansion joints that terminated at the windows.  (Patch Decl., ¶ 16, Ex. G at 226:25-227:6.) |
| | Hornaday testifies that he does not have the expertise to know if it's a problem, if the stucco expansion joints that Fitch installed, intersected at the top corners of the windows.  (Patch Decl., ¶ 16, Ex. G at 227:7-18.) |
| **CATEGORY 15**<br><br>"All efforts by YOU to repair any gaps between the stucco and the vinyl windows, louvers, baseboards, or aluminum reveals at the PROJECT." | Hornaday testifies that he couldn't recall if any efforts have been undertaken by Weitz to correct or repair the gaps that exist between the stucco and the sides of the vinyl windows at the project.  (Patch Decl., ¶ 16, Ex. G at 184:24-185:3.) |
| | Hornaday testifies that he didn't know if the condition of gaps between the stucco and the vinyl windows on the sides currently exists at the project.  (Patch Decl., ¶ 16, Ex. G at 185:4-7.)<br>Hornaday testifies that he did not know if any gaps have developed at the aluminum reveals at the columns adjacent to the retail space at the project.  (Patch Decl., ¶ 16, Ex. G at 187:20-188:6.) |
| **CATEGORY 16**<br><br>"The installation of window sealant | Hornaday testifies that he did not know if the Tamko TW40 weather barrier strips were placed around the window box before the windows were installed.  (Patch Decl., ¶ 16, Ex. G at 176:6-10.) |

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

| Description | Insufficient Preparation/Testimony |
|---|---|
| AND flashing at the PROJECT." | Hornaday testifies that he does not know if anyone at Weitz asked Mr. Fitch what he meant by Fitch's letter in which he wrote "This letter serves as a notice that all the windows at Rafael Town Center were installed without proper pre-flashing, therefore cannot be correctly waterproofed".  (Patch Decl., ¶ 16, Ex. G at 171:8-173:19.) |
| | Hornaday testifies that he does not know what aspects of the window sill detail that Mr. Fitch was objecting to in his letter.  (Patch Decl., ¶ 16, Ex. G at 176:13-17.) |
| **CATEGORY 20**<br><br>"The application of paints on handrails OR installation of steel rails." | Hornaday testifies that he was not aware of any problems with the painting of the handrails.  (Patch Decl., ¶ 16, Ex. G at 189:19-23.) |
| | Hornaday testifies that he could not recall who the subcontractor was that installed the handrails.  (Patch Decl., ¶ 16, Ex. G at 189:24-190:6) |
| | Hornaday testifies that he did not know if the handrail installation was ultimately completed properly.  (Patch Decl., ¶ 16, Ex. G at 190:7-9.) |
| **CATEGORY 21**<br><br>"ALL efforts by YOU to repair ANY paints on handrails OR steel rails at the PROJECT." | Hornaday testifies that he did not know whether there are any continuing issues concerning paint or corrosion on the handrails or steel rails at the project.  (Patch Decl., ¶ 16, Ex. G at 190:10-19.) |
| **CATEGORY 26**<br><br>"ANY water damage OR water stains at the PROJECT." | Hornaday testifies that he did not know if there continues to be water stains at the project in need of repair.  (Patch Decl., ¶ 16, Ex. G at 195:18-21.) |
| **CATEGORY 27**<br><br>"ALL efforts by YOU to repair ANY water damage OR water stains at the PROJECT." | Hornaday testifies that he did not know if Weitz had done anything to repair water damage to the carpet, stained tack strip or carpet strip at the project.  (Patch Decl., ¶ 16, Ex. G at 196:1-11.) |
| **CATEGORY 30**<br><br>"The installation of ANY caulking at the perimeter of the PROJECT." | Hornaday testifies that he did not know if he or anyone at Weitz told anyone at RCTI that caulking the Milgard windows after the stucco was applied would improve or enhance the water tightness of the building.  (Patch Decl., ¶ 16, Ex. G at 208:22-209:2.) |
| | Hornaday testifies that he did not know if he knew back in 2001 that if the Milgard windows were not caulked that they were going to leak.  (Patch Decl., ¶ 16, Ex. G at 209:20-23.) |
| | Hornaday testifies that he did not know whether the failure to caulk the foam shapes to the stucco at any location was going to result in leaks at the project.  (Patch Decl., ¶ 16, Ex. G at 212:11-14.) |
| | Hornaday testifies that he did not know if the structural steel penetrations were caulked.  (Patch Decl., ¶ 16, Ex. G at 212:15-19.) |
| | Hornaday testifies that he could not recall if Mr. Schafer asked for his opinion as to whether the caulking at the project that ultimately decided upon was sufficient.  (Patch Decl., ¶ 16, Ex. G at 214:6-9.) |

NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

| Description | Insufficient Preparation/Testimony |
|---|---|
|  | Hornaday testifies that he did not know the ten contractors that Weitz contacted to perform the caulking work.  (Patch Decl., ¶ 16, Ex. G at 214:11-215:3.) |
|  | Hornaday testifies that he did not know if the "Caulking and Sealant Subcontract Scope of Work" and "Caulking Scope of Work" documents were attached as Exhibits D and E to the final North Bay Waterproofing subcontract agreement with Weitz.  (Patch Decl., ¶ 16, Ex. G at 216:1-218:10.) |
|  | Hornaday testifies that he did not know whether the failure to caulk any of the items that were excluded from the North Bay scope of work have in any way contributed or caused the leaks at the project nor does he know anyone at Weitz that would know about this. (Patch Decl., ¶ 16, Ex. G at 219:4-12.) |
|  | Hornaday testifies that he did not know whether its Weitz's position that any of the leaks that are occurring at the project are the result of any of the items which were excluded in the caulking contract. (Patch Decl., ¶ 16, Ex. G at 219:20-24.) |
|  | Hornaday testifies that he did not know if, around the time that the caulking scope of work was being discussed, that Weitz recommended to RTCI that there was no need to caulk around the windows because there was nothing to be gained by a surface applied caulk bead.  (Patch Decl., ¶ 16, Ex. G at 226:11-16.) |
| **CATEGORY 35**<br><br>"ALL efforts by YOU to repair ANY wiring of microwave ovens in ANY apartment at the PROJECT." | Hornaday testifies that he does not know if Weitz has done anything to attempt to fix the problem with the microwave ovens.  (Patch Decl., ¶ 16, Ex. G at 240:18-25.) |
| **CATEGORY 38**<br><br>"ANY application OR proposed application of elastomeric coating at the PROJECT." | Hornaday testifies that he is not familiar with the proposal to apply the elastomeric coating.  (Patch Decl., ¶ 16, Ex. G at 241:17-24.) |
|  | Hornaday testifies that he is not knowledgeable about the proposed application of elastomeric coating.  (Patch Decl., ¶ 16, Ex. G at 242:8-17.) |
|  | Hornaday testifies that he does not know anything about whether the application of elastomeric coating should be applied to all or only a portion of the exterior of the building.  (Patch Decl., ¶ 16, Ex. G at 242:18-21.) |
| **CATEGORY 39**<br><br>"The sufficiency OR adequacy of the application of elastomeric coatings AND the sufficiency OR adequacy of the application of elastomeric coatings at | Hornaday testifies that he can't judge the sufficiency or adequacy of the application of elastomeric coating because he doesn't know what the proposed application is.  (Patch Decl., ¶ 16, Ex. G at 243:4-10.) |
|  | Hornaday testifies that he did not know that the proposed application is exactly the same as the application that was put on the teardrop south wall on the commercial building but is to be applied throughout the entire exterior of the project.  (Patch Decl., ¶ 16, Ex. G at 243:11-15.) |

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA  94111-4213
415.391.4800 · FAX 415.989.1663

| **Description** | **Insufficient Preparation/Testimony** |
|---|---|
| properties other than the PROJECT." | |
| **CATEGORY 41**<br><br>"The installation of ANY windows installed, OR previously installed, at the PROJECT." | Hornaday testifies that he does not know who at Weitz reviewed the shop drawings submitted by Hanson with respect to the installation of the windows at the project.  (Patch Decl., ¶ 16, Ex. G at 167:15-18.)<br><br>Hornaday testifies that he does not know if the Tamko TW40 weather barrier strips were placed around the window box before the windows were installed.  (Patch Decl., ¶ 16, Ex. G at 176:6-10.) |
| **CATEGORY 44**<br><br>"ANY warranties or guarantees for ANY windows installed, or previously installed, at the project." | Hornaday testifies that he does not recall what the warranty is on the windows that are not leaking at the project.  (Patch Decl., ¶ 16, Ex. G at 229:22-24.) |
| **CATEGORY 45**<br><br>"Hanson Glass, OR ANY attempt to make repairs at the PROJECT OR satisfy the WINDOW REPAIR OBLIGATION." | Hornaday testifies that he does not recall if Weitz performed repairs on the 17 stack of the residential section in 2002 and 2003.  (Patch Decl., ¶ 16, Ex. G at 235:25-236:3.)<br><br>Hornaday testifies that he does not recall if Weitz performed repairs on the 13 stack section in 2002 and 2003.  (Patch Decl., ¶ 16, Ex. G at 236:4-6.)<br><br>Hornaday testifies that he is probably not the person most knowledgeable to answer questions regarding the window repair obligation.  (Patch Decl., ¶ 16, Ex. G at 244:7-245:4.)<br><br>Hornaday testifies that he does not know the details of why substantial work was not undertaken to perform the window repair obligation until the early summer of 2004.  (Patch Decl., ¶ 16, Ex. G at 245:22-246:4.) |

> **4.      Weitz's Failure To Produce Knowledgeable Witnesses Resulted In Substantial Wasted Time And Unnecessary Costs and Fees.**

RTCI spent in excess of $15,489.50 to prepare for, and $2,260.00 to take, Hornaday's February 7, 2007 deposition.  It also incurred court reporter fees of $1,119.36.  (Patch Decl., ¶ 7-9; Declaration of Clinton L. Todd in Support of Plaintiff and Counterdefendant Rafael Town Center, LLC's Motion for Sanctions ("Todd Decl."), ¶ 12, Declaration of Jennifer A. Nelson in Support of Plaintiff and Counterdefendant Rafael Town Center, LLC's Motion for Sanctions ("Nelson Decl."), ¶ 41.)  RTCI estimates that, because Hornaday was improperly prepared to offer testimony on *any* of the categories for which he had been designated, 50% of the fees it incurred in connection with its preparation for Hornaday's February 7 deposition ($7,744.75), 80% of the fees it incurred in connection with the taking of Hornaday's deposition ($1,808.00), and 80% of the court reporter's fee

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   for that day ($895.48) were wasted.  (Patch Decl., ¶ 9.)  Hornaday's lack of preparation resulted in a

2   total of not less than $10,448.23 in excess fees to RTCI.  (Patch Decl., ¶ 9.)

3        RTCI spent not less than  $5,473.00 to prepare for, and $2,542.50 to take, Bontrager's

4   February 14, 2007 deposition.  (Patch Decl., ¶¶ 13-15; Todd Decl. ¶ 12.)  It also incurred court

5   reporter costs of $1,179.83.  (Patch Decl., ¶ 14.)  RTCI estimates that, because Bontrager was

6   improperly prepared and it received countless inadequate and useless responses, at least 50% of

7   the total cost ($9,195.33), amounting to $4,597.66, was wasted.  (Patch Decl., ¶ 15.)

8        RTCI spent not less than $4,054.00 to prepare for, and $2,655.50 to take, Hornaday's

9   February 20, 2007 deposition.  (Patch Decl., ¶¶ 18-20; Todd Decl. ¶ 12.)  RTCI also incurred court

10  reporter costs of $933.75.  (Patch Decl., ¶ 19.)  RTCI estimates that 100% of its time preparing for

11  this deposition, ($4,054.00) was wasted because it was repetitive of its February 7, 2007 efforts.

12  (Patch Decl., 20.)  RTCI also estimates that at least 50% of its time taking Hornaday's February

13  20, 2007 deposition ($1,327.75) and 50% of the court reporter's costs it incurred ($466.87) were

14  wasted because it received countless useless and inadequate responses. (Patch Decl., ¶ 20.)  Thus,

15  Hornaday's lack of preparation on February 20, 2007 resulted in RTCI incurring at least $5,848.62

16  in excess fees.

17       The total amount of sanctions requested based upon Weitz's failure to properly prepare its

18  30(b)(6) witnesses is $20,894.51.[1]

19       **B.**     **Seyfarth Failed To Properly Produce Documents To RTCI.**

20       RTCI served Weitz with a Request For Production Of Documents on November 17, 2006.

21  (Todd Decl., ¶ 3, Ex. A.)  In response, Weitz's counsel sent RTCI three massive "document

22  dumps" (PDF images of over 76,000 hard copy documents) that were scanned and Bates

23  numbered completely out of order.  (Nelson Decl., ¶ 4; Todd Decl., ¶¶ 5-10.)

24  ///

25

26  [1] This amount was determined by adding $10,448.23 (excess costs resulting from Hornaday's
    February 7, 2007 deposition), $4,597.66 (excess costs resulting from Bontrager's February 14,
27  2007 deposition), and $5,848.62 (excess costs resulting from Honaday's February 20, 2007
    deposition).

28

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213

415.391.4800 · FAX 415.989.1663

1.     **Seyfarth's First And Second Productions Clearly Failed To Conform To Federal Rules.**

Seyfarth first produced copies of Weitz's documents to RTCI by DVD on January 2, 2007 (more than 45 days after RTCI was served with the Request For Production).  (Nelson Decl., ¶ 10, Ex. A; Declaration of Gregg M. Ficks In Support of Plaintiff and Counterdefendant Rafael Town Center, LLC's Motion for Sanctions ("Ficks Decl."), ¶ 2.)  The DVD contained thousands of PDF files that were not in file folders, did not appear to be in the order in which they were originally maintained, and were not in any way identified with respect to RTCI's individual requests. (Nelson Decl., ¶ 11, Ex. B, ¶ 12, Ex. C, ¶ 13, Exs. D, E, ¶ 15.)  RTCI contacted Seyfarth, the next day, advising that it was confused by Weitz's production and requested that Seyfarth resubmit Weitz's documents in the proper format.  (Ficks Decl., ¶ 4, Ex. A, ¶ 5, Ex. B.)

Seyfarth furnished RTCI with two more DVDs on January 11, 2007 (version two of Defendant's production).  (Nelson Decl., ¶ 17, Ex. F.)  This was less than 19 business days away from Weitz's scheduled Rule 30(b)(6) depositions, pursuant to this Court's Scheduling Order. (Nelson Decl., ¶ 17.)  Upon receiving the DVDs, RTCI engaged in a full-scale document review. (Nelson Decl., ¶ 20.)  The January 11, 2007 DVDs contained 9,014 PDF files that were in Bates number order.  (Nelson Decl., ¶ 19, Ex. I.)  After countless hours of review, RTCI realized that the documents were completely out of order and that Weitz had not produced copies of the file folders that originally held the documents.  (Nelson Decl., ¶¶ 20, 21.)

RTCI again contacted Seyfarth, advising that something appeared to be wrong with the organization of Weitz's production.  (Todd Decl., ¶ 7.)  Seyfarth could not immediately address

///
///
///
///
///
///
///

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213

415.391.4800 · FAX 415.989.1663

1    RTCI's concerns.  (Todd Decl., ¶ 7.)  It simply promised to reproduce the documents, with copies

2    of Weitz's file folders, at a later date.  (Todd Decl., ¶ 9.)[2]

3          **2.    Seyfarth's Final Version of Defendant's Production Demonstrated That
           The Initial Productions Had Been "Shuffled."**

4

5          Finally, on February 12, 2007 Seyfarth sent RTCI yet two more DVDs (version three of

6    Defendant's production).  (Nelson Decl., ¶ 28, Exs. N, O, P.)  This was five days after RTCI took

7    Weitz's first Rule 30(b)(6) deposition and after RTCI had completed its review of Seyfarth's

8    second version of Weitz's production.  (Nelson Decl., ¶ 28; Todd Decl. ¶ 10.)  This time, the

9    documents were produced in electronic file folders, and the documents appeared to be organized

10   in the order in which they were originally maintained by Weitz.  (Nelson Decl., ¶¶ 28, 29, Ex. Q,

11   ¶ 33.)  It is this version of the production, in fact, that reveals that all of the documents which had

12   originally been maintained by Weitz in discreet subcontractor files had been shuffled and

13   produced with non-sequential, inexplicable gaps in Weitz's first and second versions of

14   Defendant's production.  (Nelson Decl., ¶ 30, Ex. R, ¶ 31, Ex. S, ¶¶ 32, 34, Exs. T, U, ¶ 36.)  Thus,

15   for example, the subcontractor file which applies to the extremely important contract for the

16   application of stucco to the exterior of the building (the Fitch Plastering file), shows that

17   documents within the file were numbered in a Bates range of 1911-1939; then skipped to

18   29,499-29,775; then skipped to 37,723-37,762; skipping then again to 50,858-51,264; skipping

19   once again to 55,826-55,834; and, finally, skipping to 69,391-69,514.  (Nelson Decl., ¶ 36.)  There

20   were no documents withheld from this production which in any way explain the vast numbering

21   gaps.  (Nelson Decl., ¶¶ 35, 36.)  Obviously, when RTCI attempted to review the documents in

22   _____

23   [2] Seyfarth sent RTCI another DVD, on January 26, 2007, with over 1,800 PDF files.  (Nelson
     Decl., ¶ 23, Ex. J. )  The DVD appeared to be a supplement to the two DVDs produced on
24   January 11, 2007.  (Nelson Decl., ¶ 23.)  RTCI reviewed the documents on this DVD.  (Nelson
     Decl., ¶ 26.)  The DVD had the same deficiencies as the two DVDs Seyfarth produced on
25   January 11, 2007.  (Nelson Decl., ¶ 24, Ex. K, ¶ 25, Exs. L, M; ¶ 26.)  The documents were not in
     Bates number order and were not produced in the manner in which they were originally
26   maintained by Weitz.  (Nelson Decl., ¶ 26; Todd Decl., ¶ 8.)  And, again, copies of the folders that
     originally contained the files were not produced.  (Nelson Decl., ¶ 26; Todd Decl., ¶ 8.)

27

28

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   Bates number order (as produced by Weitz in its first three productions), documents that clearly

2   belonged in the Fitch Plastering subcontractor file were interspersed with documents belonging in

3   many other separate original files.  (Nelson Decl., ¶¶ 35, 36.)  Equally obvious, the files were not

4   produced in the first two versions of the production in the manner in which they were originally

5   maintained by Weitz, and certainly not organized according to the specific document requests.

6   (Nelson Decl, ¶ 34, Ex. T, ¶¶35-36.)

7           **3.      Seyfarth's Multiple Productions Of Weitz's Documents In Improper
                       Formats Has Resulted In Substantial Wasted Time And Excessive**
8                      **Costs.**

9           Seyfarth's repeated failures to properly produce Weitz's documents caused RTCI to incur

10  substantial unnecessary costs and fees.  (Nelson Decl., ¶¶  6, 8-9, 41; Todd Decl., ¶ 11.)  RTCI

11  spent over 121 hours reviewing Weitz's second and third production, resulting in $20,400.50 in

12  excess attorneys' fees.  (Nelson Decl., ¶ 41; Todd Decl., ¶ 11.)  All of this time was wasted

13  because the documents could not be evaluated in the proper context or analyzed with respect to

14  particular subcontractors or events.  (Nelson Decl., ¶¶  8, 39; Todd Decl., ¶ 11.)  Moreover,

15  because the documents were produced in PDF format, there is no way to translate the coding and

16  other notations from the initial review to the final production.  (Nelson Decl., ¶ 9.)  All the time

17  and effort RTCI put into reviewing Seyfarth's second version of its production of Weitz's

18  documents must be repeated to review Seyfarth's third version of the production (a production that

19  contains approximately 76,000 documents).  (Nelson Decl., ¶¶ 9, 37-39.)

20          **C.      Meet And Confer Efforts.**

21          While not required to for purposes of this motion, RTCI contacted Weitz by letter, on

22  March 12, 2007, to meet and confer regarding its failure to produce knowledgeable 30(b)(6)

23  witnesses and its failure to properly produce responsive documents.  (Declaration of Nyoki T.

24  Sacramento In Support of Plaintiff and Counterdefendant Rafael Town Center's Motion for

25  Sanctions ("Sacramento Decl."), ¶ 3, Ex. A.)  RTCI requested that Weitz reimburse it for the

26  extraordinary expenses it incurred as a result of Weitz's disregard of its discovery obligations.

27  (Sacramento Decl., ¶ 3, Ex. A.)  Weitz similarly rejected RTCI's requests.  (Sacramento Decl., ¶ 5,

28  Ex. B.)

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1    RTCI now asks this Court to intervene and impose monetary sanctions against Weitz and

2    Seyfarth for their irresponsible tactics.

3                                    **ARGUMENT**

4    **I.   WEITZ SHOULD BE SANCTIONED, UNDER FEDERAL RULE OF CIVIL
          PROCEDURE 37(d) AND NORTHERN DISTRICT LOCAL RULE 1-4 FOR

5          FAILING TO PRODUCE KNOWLEDGEABLE AND PREPARED WITNESSES IN
          RESPONSE TO RTCI'S RULE 30(b)(6) NOTICE.**

6

7         Weitz should be monetarily sanctioned for failing repeatedly to discharge its duty to

8    produce knowledgeable and prepared witnesses in response to RTCI's Rule 30(b)(6) Notice.  *In re*

9    *Vitamins AntiTrust Lit.*, 216 F.R.D. 168, 174 (D.D.C. 2003) ("[m]onetary sanctions [against a

10   corporate party or its counsel] are mandatory under Rule 37(d) for failure to appear by means of

11   wholly failing to educate a Rule 30(b)(6) witness"); *Resolution Trust Corp. v. Southern Union Co.,*

12   *Inc.*, 985 F.2d 196, 197 (5th Cir. 1993) (expense shifting sanctions are appropriate when a

13   corporation produces a witness, pursuant to a notice under Federal Rule of Civil Procedure

14   30(b)(6), who lacks knowledge to fully testify for the corporation); N.D. Local Rule 1-4 ("[f]ailure

15   by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be

16   a ground for imposition of any authorized sanction").

17        Weitz had an affirmative obligation, under Federal Rule of Civil Procedure 30(b)(6), to

18   ensure that Bontrager and Hornaday, were thoroughly educated and prepared to testify fully,

19   completely, and unevasively about their designated topics.  *In re Vitamins AntiTrust Lit.*, 216

20   F.R.D. at 174 (corporation and its counsel required, under Federal Rule of Civil Procedure

21   30(b)(6), to ensure that the corporation's witnesses are thoroughly educated to testify on behalf of

22   the corporation); *Intl. Assoc. of Machinists & Aerospace Workers v. Werner-Matsuda*, 390

23   F.Supp.2d 479, 487 (D. Md. 2005) (Federal Rule of Civil Procedure 30(b)(6) requires that a

24   corporation prepare for its deposition by having its witnesses review all information known or

25   reasonably available to the corporation; while burdensome, this is the result of the concomitant

26   obligation from the privilege of being able to use the corporate form to conduct business); *FDIC*

27   *Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986) (same).

28   ///

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1    Bontrager and Hornaday were, in effect, testifying on behalf of Weitz.  *Resolution Trust*

2   *Corp.*, 985 F.2d at 197.  They were obligated to testify about everything within their designated

3   topics that Weitz believed, knew, or opined.  *United States v. Taylor*, 166 F.R.D. 356, 361

4   (M.D.N.C. 1996) (a corporate designee testifies about the corporations subjective beliefs and

5   opinions and also all facts within the corporate knowledge, including matters not within the

6   designees personal knowledge).  Weitz (and Seyfarth) had a duty to ensure, before presenting

7   Bontrager and Hornaday for testimony, that they had studied all of Weitz's relevant documents and

8   communicated fully with people who were involved in the matters in which they were designated

9   to testify.  *Taylor*, 166 F.R.D. at 361-62 (if a corporation's Rule 30(b)(6) designee does not have

10  personal knowledge regarding his designated topic, he must study all documents known or

11  available to the corporation and communicate with persons involved in the matters, even

12  employees no longer working for the corporation); *Concerned Citizen v. Belle Haven Club*, 223

13  F.R.D. 39, 43 (D. Conn. 2004) ("[e]ven if the documents are voluminous and the review of the

14  documents would be burdensome, the deponents are still required to review them in order to

15  prepare themselves to be deposed"); *In re Vitamins Antitrust Lit.*, 216 F.R.D. at 168 (Rule 30(b)(6)

16  witness must be "thoroughly educated about the noticed deposition topics with respect to any and

17  all facts known to [the corporation] or its counsel, regardless of whether [those] facts are

18  memorialized in work product protected documents or reside in the minds of counsel").

19   Weitz completely failed to discharge its duty.  (Patch Decl., ¶¶ 6, 12, 17.)  Bontrager and

20  Hornaday, admittedly, made no attempt to review many of the critical documents relevant to their

21  designated topics, nor did they communicate fully with persons involved in matters significant to

22  their testimony.  (Patch Decl., ¶ 10, Ex. E at 34:20-35:11, 38:20-39:25, 46:21-47:21, 67:14-68:7,

23  76:9-77:4, 94:5-96:25, 108:1-6, 116:7-117:7, *and* ¶ 5, Ex. C at 17:8-14, 18:19-19:14, ¶ 16, Ex. G

24  at 157:11-158:8, 161:1-13, 166:12-167:9, 239:20-23.)

25   Hornaday, at his first deposition on February 7, 2007, could not provide meaningful

26  testimony about a single topic in which he had been designated.  (Patch Decl., ¶ 6.)  In fact, he was

27  so ill-prepared that Seyfarth terminated the deposition and requested additional time to properly

28  ///

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   prepare him.  (Patch Decl., ¶ 5, Ex. C at 116-19-118:16 *and* ¶ 6.)  This was something Seyfarth,

2   undeniably, should have done in the first instance.

3         Moreover, after RTCI gave Hornaday 12 extra days to prepare, he still was not prepared to

4   testify fully for RTCI.  (Patch Decl., ¶ 17.)  At his February 20, 2007 "re-take," he still could not

5   testify meaningfully regarding at least 15 of the 33 topics in which he was designated.  (Patch

6   Decl., ¶¶ 16-17.)  In fact, he answered RTCI's questions with variations of "I don't know, "I can't

7   recall," and "I don't remember" more than 265 times.  (Patch Decl., ¶ 17.)  He was so uneducated

8   that he could not present even Weitz's position on critical issues in this case, such as Weitz's

9   opinion regarding repairs that it had completed at Rafael Town Center, and Weitz's opinion about

10  whether it should apply an elastomeric coating to the exterior of Rafael Town Center (an issue

11  significant to this case because RTCI's designer has recommended to Weitz that Weitz apply the

12  coating to the entire site because it will remedy the leakage problem).  (Patch Decl., ¶ 16, Ex. G at

13  242:8-21.)  Weitz must have a position regarding the repairs it completed at Rafael Town Center

14  and the repairs it has been asked to complete at Rafael Town Center.  These issues are at the heart

15  of this litigation, and Hornaday was clearly on notice that RTCI would inquire into these matters.

16  (Patch Decl., ¶ 2, Ex. A.)  There is simply no good reason for his inability to answer such direct

17  and pointed inquiries.

18        As discussed *supra*, Weitz's disregard for its Rule 30(b)(6) obligation did not stop with

19  Hornaday.  Bontrager was also not prepared to fully testify on Weitz's behalf.  Bontrager, at his

20  February 14, 2007 deposition, responded to RTCI's questions more than 145 times with variations

21  of "I don't know," I don't remember," and "I can't recall."  (Patch Decl., ¶¶ 11, 12.)  In fact,

22  Bontrager could testify meaningfully regarding only two of the ten topics in which he was

23  designated.  (Patch Decl., ¶¶ 11, 12.)  He was so inadequately prepared that he could not testify

24  even about Weitz's understanding of its obligations under the settlement agreement, or the actions

25  it had taken to satisfy its obligations under the settlement agreement – the central topic in which he

26  was designated to testify.  (Patch Decl., ¶ 10, Ex. E at 34:4-15, 34:20-35:11, 35:12-36:3, 43:14-19,

27  52:5-9, 70:18-72:11, 72:17-74:6, 91:14-93:6, 94:5-96:25, 99:11-100:22.)

28  ///

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1  Bontrager's lack of preparation, like Hornaday's, was inexcusable.  Indeed, had Bontrager

2  taken time to speak with persons involved in the negotiations process, he would have been able to

3  adequately respond to such inquiries.  (Patch Decl., ¶ 10, Ex. E at 34:4-15, 34:20-35:11, 96:7-25

4  (noting that all Bontrager did to prepare for his testimony regarding Weitz's interpretation of its

5  obligations and performance under the settlement agreement was review the agreement itself; he

6  admittedly, did not speak with anyone regarding the negotiations process).)

7  The fact is that either Bontrager and Hornaday had no understanding of what their roles as

8  Rule 30(b)(6) witnesses entailed, or they decided, deliberately, to disregard their obligation.

9  Either way, Weitz is responsible.  *See Intl. Assoc. of Machinists & Aerospace Workers*, 390

10  F.Supp.2d at 489 (ordering monetary sanctions against corporation and its counsel for failing to

11  educate Rule 30(b)(6) designees).

12  Weitz's disregard of its obligation under Federal Rule of Civil Procedure 30(b)(6) merits

13  sanctions.  *Taylor*, 166 F.R.D. at 361 ("[p]roducing an unprepared witness is tantamount to a

14  failure to appear[,]" which gives the court authority to impose a panoply of sanctions, including

15  the imposition of costs).  Its failure to produce educated and prepared witnesses was significant,

16  conscious, and willful.  Bontrager and Hornaday, admittedly, failed to review key documents and

17  failed to speak with key persons involved in the matters in which they were designated to testify.

18  (Patch Decl., ¶ 16, Ex. G, ¶ 17.)

19  This Court should issue an order precluding or restricting trial testimony on the

20  unanswered categories and expense shifting as a sanction for Weitz's (and Seyfarth's) willful

21  disregard of their Rule 30(b)(6) obligation, and require Weitz to reimburse RTCI $20,894.51,

22  which represents the excess attorneys' fees it incurred in preparing for and taking Bontrager and

23  Hornaday's three depositions.  *Intl. Assoc. of Machinists & Aerospace Workers*, 390 F.Supp.2d at

24  489 ("[m]onetary sanctions are mandatory under Rule 37(d) for failure to appear by means of

25  wholly failing to educate a Rule 30(b)(6) witness," and the "rule provides that a court shall require

26  the party failing to act or the attorney advising that party or both to pay the reasonable expenses,

27  including attorney's fees, caused by the failure"); *In re Vitamins AntiTrust Lit.*, 216 F.R.D. at 174

28  ("[m]onetary sanctions are mandatory under Rule 37(d) for failure to appear by means of wholly

NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

1  failing to educate a Rule 30(b)(6) witness[,]" including fees to prepare motion to compel and

2  motion for sanctions); *Artic Cat, Inc. v. Injection Research Specialists, Inc.*, 210 F.R.D. 680, 682-

3  683 (D. Minn. 2002) (imposing expense shifting sanction against a corporation that designated an

4  unqualified deponent); *Resolution Trust Corp.*, 985 F.2d at 197 (expense shifting sanctions under

5  Rule 37(d) are fully justified when a corporation fails to make a meaningful effort to comply with

6  its obligation to designate an appropriate Rule 30(b)(6) witness with knowledge of the requisite);

7  *Paul Revere Life Ins. Co. v. Jafari*, 206 F.R.D. 126, 128 (Md. 2002) (requiring party who failed to

8  properly prepare a Rule 30(b)(6) witness to reimburse discovering party its reasonable attorney's

9  fees and any expenses incurred in having to re-depose the witness); *Zambrano v. City of Tustin*,

10  885 F.2d 1473, 1480 (9th Cir. 1898) (district court can impose monetary sanctions under its local

11  rules for conduct amounting to recklessness, gross negligence, and repeated, although

12  unintentional flouting of court rules).

13  **II.     SEYFARTH SHOULD BE SANCTIONED FOR REPEATEDLY PRODUCING
             MASSIVE QUANTITIES OF DOCUMENTS TO RTCI IN NO DISCERNIBLE**
14  **         ORDER AND IN WILLFUL DISREGARD OF THE REQUIREMENTS OF
             FEDERAL RULE OF CIVIL PROCEDURE 34(b).**

15

16        Weitz's counsel, Seyfarth, should be monetarily sanctioned for producing over 76,000

17  documents to RTCI in direct violation of its obligations under the Federal Rules.  28 U.S.C.

18  § 1927 (any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously

19  may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

20  reasonably incurred because of such conduct"); *Roadway Expressway, Inc. v. Piper*, 447 U.S. 752

21  (1980) (federal courts have authority under 28 U.S.C. § 1927 and under their inherent power to

22  levy fees and costs against attorneys who violate the federal discovery rules); *Fjelstad v. Am.*

23  *Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) ("district courts may rely upon their

24  inherent powers in penalizing some forms of discovery abuse"); N.D. Local Rule 1-4 ("[f]ailure by

25  counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a

26  ground for imposition of any authorized sanction"); *Zambrano*, 885 F.2d 1473, 1480 (district court

27  can impose monetary sanctions under its local rules for conduct amounting to recklessness, gross

28  negligence, and repeated, although unintentional flouting of court rules).

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1    Seyfarth was required to either produce Weitz's documents to RTCI as they were "kept in

2  their usual course of business[,]" or to "organize and label them to correspond to the categories in

3  [RTCI's] request." Fed.R.Civ.P. 34(b).  Seyfarth did neither.  (Nelson Decl., ¶¶ 4, 10, 15, 20, 26,

4  32-36; Todd Decl., ¶¶ 5-10.)

5    Seyfarth, in contravention of its obligation under Federal Rule of Civil Procedure 34(b),

6  produced over 76,000 documents (the equivalent of 30 bankers boxes) to RTCI out of order, two

7  separate times.  *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 609 (D. Neb. 2001) (producing large

8  amounts of documents in no apparent order does not comply with a parties obligation under

9  Rule 34); *In re Adelphia Comms. Corp.*, 338 B.R. 546, 553 (S.D.N.Y. 2005); *Ferrito v. Ikon*

10 *Office Solutions, Inc.*, 2000 U.S. Dist. LEXIS 22336, *5 (D. Kan. 2000) (producing 2,000 pages of

11 documents without any organization or labeling does not comply with the requirements of

12 Fed.R.Civ.P. 34(b)); *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) (producing 7,000 pages

13 of documents in no apparent order does not comply with a party's obligation under Rule 34(b)).

14    Weitz's responsive documents were tangible, paper documents.  (Nelson Decl., ¶ 43.)  As a

15 result, Weitz's production should have been relatively simple and straightforward.  The documents

16 only needed to be copied, Bates Numbered, and produced to RTCI in the manner in which they

17 were maintained by Weitz.  (Nelson Decl., ¶¶ 4, 43.)

18    There is no excuse for Seyfarth having allowed the documents to be Bates numbered out of

19 order.  At its best, this was reckless behavior – behavior which warrants sanctions under 28 U.S.C.

20 Section 1927.  *Naegele v. Albers*, 355 F.Supp.2d 129, 145 (D.C. 2005) (recklessness under section

21 1927 requires only a showing that counsel acted with knowledge of facts which would disclose the

22 danger to a reasonable man).  Any reasonable person could foresee that scanning and Bates

23 numbering over 76,000 hard copy documents out of the order would cause needless work and

24 duplication.

25    There is also no excuse for Seyfarth, after receiving communications from RTCI on

26 January 3, 2007 about problems with the first version of the production, to have reproduced

27 documents to RTCI out of order, again, on January 11, 2007.  (Nelson Decl., ¶¶ 17-20; Todd

28 Decl., ¶¶ 5-6; Ficks Decl., ¶ 4, Ex. A, ¶ 7, Ex. D.)  Any reasonable attorney after receiving a

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1    complaint would take the time to adequately investigate before once again producing truckloads of

2    documents in no discernable order.  Seyfarth had multiple opportunities to remedy the defects in

3    Weitz's production.  On multiple occasions they failed to address RTCI's concerns.

4        "Many discovery requests, and responses thereto, can be used to harass opposing parties or

5    to increase the cost of litigation." *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996).[3]  Here, the

6    evidence demonstrates that Seyfarth used Weitz's response to harass RTCI and increase the cost of

7    litigation.  Seyfarth's duplicitous productions unreasonably and vexatiously multiplied these

8    proceedings.  RTCI spent over $20,400.50, representing over 119 hours, reviewing the second

9    version of the production that it received from Seyfarth.  (Nelson Decl., ¶ 41; Todd Decl., ¶ 11.)

10    And, now Seyfarth has produced yet another version of the 76,000 documents (albeit allegedly in

11    the proper order), which RTCI will have to re-review.  (Nelson Decl., ¶ 44.)

12        RTCI should not be required to bear the costs of Seyfarth's wasteful litigation practices.[4]

13    This Court has power under 28 U.S.C. Section 1927, Northern District Local Rule 1-4, and its

14    inherent authority to impose cost shifting as a sanction for Seyfarth's bad faith conduct.  There

15    must be a remedy for Seyfarth's reckless or bad faith production of massive amounts of

16    documents.  This Court should order Seyfarth to reimburse RTCI $20,400.50 for the excess costs

17    and duplicitous efforts it has been forced to incur.

18    **III.  THIS COURT SHOULD ORDER WEITZ AND SEYFARTH TO REIMBURSE
19          RTCI FOR THE FEES IT INCURRED IN PREPARING THIS MOTION.**

20        This Court should also order Weitz and Seyfarth to reimburse RTCI $25,777.50 for the

21    reasonable attorneys' fees it incurred in bringing this motion for sanctions.  (Sacramento Decl., ¶ 6

22    (reflecting $8,500.00 for Ms. Sacramento's work on this motion), Patch Decl., ¶ 21 (reflecting

23

24    [3] Apparently, it is not rare for opposing counsel to deliberately produce documents out of order.
     [Fed.R.Civ.P. 34 Advisory Committee Notes (1980).]

25    [4] *B.K.B v. Maui Police Dept.*, 276 F.3d 1091, 1106 (9th Cir. 2002) (sanctions pursuant to section

26    1927 are supported by a finding of recklessness, and sanctions pursuant to a court's inherent power
     are supported by bad faith); *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir.

27    1989) (tactics undertaken with the intent to increase expenses or delay may support a finding of
     bad faith).

28

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1    $3,559.50 for Mr. Patch's work on this motion), Todd Decl., ¶ 13 (reflecting $5,735.00 for

2    Mr. Todd's work on this motion), and Nelson Decl. ¶ 42 (reflecting $7,983.00 for Ms. Nelson's

3    work and the work of one of her staff members on this motion).)  This Court has the power under

4    Federal Rule of Civil Procedure 37(d); 28 U.S.C. Section 1927, Northern District Local Rule 1-4,

5    and its inherent authority to impose this expense shifting sanction.  *In re Vitamins AntiTrust Lit.*,

6    216 F.R.D. at 174 (fees the moving party incurs to prepare a motion for sanctions related to

7    production of an uneducated 30(b)(6) deponent are mandatory under Federal Rule of Civil

8    Procedure 37(d)); *See Roadway Expressway, Inc.*, 447 U.S. 752 (federal courts have authority

9    under 28 U.S.C. § 1927 and under their inherent power to levy fees and costs against attorneys

10   who violate the federal discovery rules); *Zambrano*, 885 F.2d 1473, 1480 (district court can

11   impose monetary sanctions under its local rules for conduct amounting to recklessness, gross

12   negligence, and repeated, although unintentional flouting of court rules).

13                                   **CONCLUSION**

14            For all the foregoing reasons, RTCI respectfully requests that the Court grants this motion

15   in its entirety and enter an order restricting trial testimony on the unanswered 30(b)(6) categories

16   and directing Weitz to reimburse RTCI $20,894.51 for the excess expenses it incurred in preparing

17   for an taking the three 30(b)(6) depositions, plus $12,888.75 for half of the expenses it incurred in

18   bringing this motion.

19            RTCI also requests that the Court order Seyfarth to reimburse RTCI $20,400.50 for the

20   excess fees it incurred in reviewing Seyfarth's second version of Defendant's document

21   production, plus $12,888.75 for half of the expenses it incurred in bringing this motion.

22   DATED: May 29, 2007                   Respectfully submitted,

23                                         COBLENTZ, PATCH, DUFFY & BASS LLP

24

25                                         By:  */s/ Richard R. Patch*
                                                Richard R. Patch
26                                              Attorneys for Plaintiff and Counterdefendant
                                                RAFAEL TOWN CENTER INVESTORS, LLC
27

28

**NOTICE OF MOTION AND MOTION OF RAFAEL TOWN CENTER INVESTORS, LLC FOR SANCTIONS;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663